IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**PAUL GRIFFITH,**

      **Plaintiff,**

**v.**                                       **Civil Action No.:**  2:21-cv-00369

**THE CHEMOURS COMPANY,**
**THE CHEMOURS COMPANY FC, LLC,**
**AND THE CHEMOURS COMPANY TT, LLC,**

      **Defendants.**

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendants The Chemours Company, The Chemours Company FC, LLC, and the Chemours Company TT, LLC ("Defendants") hereby remove this action, which is now pending in the Circuit Court of Kanawha County, West Virginia, Civil Action No. 21-C-352, to the United States District Court for the Southern District of West Virginia.

As will be shown below, this Court has original jurisdiction over this matter pursuant to diversity jurisdiction under 28 U.S.C. § 1332(a); venue is proper; removal is timely, the action is between citizens of different states; the amount in controversy exceeds $75,000, exclusive of interest and costs; and all Defendants consent to removal. In support this removal, Defendants state as follows:

## I. VENUE

1.     On or about April 28, 2021, Plaintiff Paul Griffith ("Plaintiff") commenced this civil action by filing a Complaint in the Circuit Court of Kanawha County, West Virginia, styled Paul Griffith v. The Chemours Company, The Chemours Company FC, LLC, and The Chemours

Company TT, LLC, Civil Action No. 21-C-352 (hereinafter "Civil Action").  A certified copy of the docket sheet of the Circuit Court of Kanawha County, West Virginia, together with copies of the State Court record, including all pleadings, process, and other papers are attached hereto as Exhibit A, and constitute the only process, pleadings, or orders that have been filed in the Civil Action.  As the case was filed in Kanawha County, West Virginia, this Court is the appropriate venue for removal.  See L.R. Civ. P. 77.2.

## II. <u>TIMELINESS OF REMOVAL</u>

Defendants The Chemours Company and The Chemours Company FC, LLC were served with a Summons and Complaint through the West Virginia Secretary of State's Office on May 26, 2021.  (See Service of Process information from WVSOS's website, attached hereto as Exhibit B).  As explained more fully below, Defendant The Chemours Company TT, LLC is a defunct company.  It has not been served.

This Notice of Removal is timely under the thirty-day rule stated in 28 U.S.C. § 1446(b).

## III. <u>DIVERSITY OF CITIZENSHIP</u>

According to the Complaint, Plaintiff is a resident of Boone County, West Virginia.  (See Exhibit A, Complaint, Paragraph 1).  The Chemours Company is a Delaware corporation with its principal place of business in Wilmington, Delaware.  The Chemours Company FC, LLC is a Delaware limited liability company with its principal place of business in Wilmington, Delaware.  The Chemours Company is The Chemours Company FC, LLC's 100% owner and sole member.  As such, The Chemours Company and The Chemours Company FC, LLC are each citizens of Delaware.  See Central West Virginia Energy Co., Inc. v. Mountain State Carbon, LLC, 636 F.3d 101(4th Cir. 2011)(stating that the citizenship of an LLC is determined by the citizenship of all of its members).

2

The Chemours Company TT, LLC is defunct as it was merged with and into The Chemours Company FC, LLC, on November 1, 2017.  (See Certificate of Merger, attached hereto as Exhibit C).   Prior to this merger, The Chemours Company was The Chemours Company TT, LLC's 100% owner and sole member.  As such, at the time of the merger, The Chemours Company TT, LLC was a citizen of Delaware.[1]

## IV.  AMOUNT IN CONTROVERSY

This suit is of a civil nature and, upon information and a good faith, reasonable belief, the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00. Specifically, in addition to other relief, through the Complaint, Plaintiff seeks actual damages (which would include damages for lost wages and benefits), punitive damages, and attorney's fees and costs.   (See Exhibit A, Complaint, Wherefore Clause).   Thus, this Court has original jurisdiction and this matter is properly removed to federal court.

## VI.  NOTICE TO PARTIES AND STATE COURT

True and correct copies of this Notice of Removal with accompanying exhibits and a Notice of Removal of this Civil Action to Federal Court directed to the Circuit Court of Kanawha County, West Virginia, are being served upon Plaintiff and being filed with the Circuit Clerk of Kanawha County, State of West Virginia, in accordance with the provisions of 28 U.S.C. § 1446(d).  A copy of the Notice of Removal of This Civil Action to Federal Court is attached hereto as Exhibit D.

---

[1] Additionally, since Plaintiff's allegations are based upon his termination from employment on September 26, 2019 (well past the date that The Chemours Company TT, LLC was merged with and into The Chemours Company FC, LLC), The Chemours Company TT, LLC is a nominal party in this litigation such that its citizenship must be disregarded for purposes of establishing diversity jurisdiction.  See AU Optronics Corporation v. South Carolina, 699 F.3d 385 (4th Cir. 2012)(a federal court must disregard nominal parties and rest jurisdiction only upon the citizenship of real parties to the controversy); Maryland v. Exxon Mobile Corporation, 352 F.Supp.3d 435 (D. Md. 2018)(finding that a defunct corporation was a nominal party for purposes of removal); Gentry v. Sikorsky Aircraft Corporation, 383 F.Supp. 3d 442 (E.D. Pa. 2019)(finding that the pre-merger company has no actual interest in the outcome of the litigation, making it a nominal party).

**WHEREFORE,** Defendants respectfully request that this action be removed to the United States District Court for the Southern District of West Virginia, and that no further proceedings be held in the Circuit Court of Kanawha County, West Virginia

THE CHEMOURS COMPANY, THE CHEMOURS COMPANY FC, LLC, AND THE CHEMOURS COMPANY TT, LLC

By Spilman Thomas & Battle, PLLC

*/s/Ellen J. Vance*
Eric W. Iskra (WV State Bar # 6611)
Ellen J. Vance (WV State Bar # 8866)
300 Kanawha Boulevard, East (Zip 25301)
P.O. Box 273
Charleston, West Virginia  25321-0273
304-340-3800
304-340-3801 (fax)
eiskra@spilmanlaw.com
evance@spilmanlaw.com

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON

**PAUL GRIFFITH,**

     **Plaintiff,**

**v.**                                                      Civil Action No.: _____

**THE CHEMOURS COMPANY,**
**THE CHEMOURS COMPANY FC, LLC,**
**AND THE CHEMOURS COMPANY TT, LLC,**

     **Defendants.**

## CERTIFICATE OF SERVICE

I, Ellen J. Vance, do hereby certify that the foregoing **"Notice of Removal"** was electronically filed on this 25th day of June, 2021, with the Clerk of the Court using the CM/ECF system and served on counsel of record as follows:

     Laura Davidson, Esquire
     Jennifer S. Wagner, Esquire
     Mountain State Justice
     1029 University Avenue, Suite 101
     Morgantown, West Virginia  26505

                    */s/Ellen J. Vance*_____
                    Ellen J. Vance (WV State Bar #8866)

PAUL GRIFFITH vs. CHEMOURS COMPANY

Case 2:21-cv-00369 Document 1 Filed 06/25/21 Page 6 of 30 PageID #: 48

| LINE | DATE | | ACTION |
|---|---|---|---|
| 1 | 04/28/21 | # | CASE INFO SHEET; COMPLAINT; ISSUED SUM & 6 CPYS; F FEE; RCPT |
| 2 | | | 586483; $245.00 |
| 3 | 05/14/21 | # | RE-ISSUED SUM & 1 CPY AS TO CHEMOURS CO. |
| 4 | 06/01/21 | # | LET FR SS DTD 5/26/21; SUM W/RET (5/26/21 SS) AS TO CHEMOURS |
| 5 | | | CO. FC, LLC |
| 6 | 06/01/21 | # | LET FR SS DTD 5/26/21; SUM W/RET (5/26/21 SS) AS TO CHEMOURS |
| 7 | | | CO. |
| 8 | 06/08/21 | # | (2) E-CERTS FR SS |

A TRUE COPY
June 9, 2021
TESTE [signature] CLERK
CIRCUIT COURT KANAWHA COUNTY, W.VA.

EXHIBIT
A
tabbies

IN THE CIRCUIT COURT OF ___KANAWHA___ COUNTY, WEST VIRGINIA

## CIVIL CASE INFORMATION STATEMENT
(Civil Cases Other than Domestic Relations)

**I. CASE STYLE:**

Plaintiff(s)

PAUL GRIFFITH

Case No. 21-C-33

Judge: Bloom

Plaintiff's Phone: (304) 326-0188

vs.

Defendant(s)

THE CHEMOURS COMPANY FC, LLC

CT CORPORATION SYSTEM

1627 QUARRIER ST.

Street Address

CHARLESTON, WV 25311-2124

City, State, Zip Code

Days to Answer: 20

Type of Service: WEST VIRGINIA SECRETARY OF STATE

Defendant's Phone: _____

**II. TYPE OF CASE:**

- [X] General Civil
- [ ] Mass Litigation *[As defined in T.C.R. 26.04(a)]*
  - [ ] Asbestos
  - [ ] FELA Asbestos
  - [ ] Other: _____
- [ ] Habeas Corpus/Other Extraordinary Writ
- [ ] Other: _____

- [ ] Adoption
- [ ] Administrative Agency Appeal
- [ ] Civil Appeal from Magistrate Court
- [ ] Miscellaneous Civil Petition
- [ ] Mental Hygiene
- [ ] Guardianship
- [ ] Medical Malpractice

**III. JURY DEMAND:** [X] Yes [ ] No  CASE WILL BE READY FOR TRIAL BY (Month/Year): ___/___

**IV. DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS?**

[ ] Yes [X] No

IF YES, PLEASE SPECIFY:
- [ ] Wheelchair accessible hearing room and other facilites
- [ ] Reader or other auxiliary aid for the visually impaired
- [ ] Interpreter or other auxiliary aid for the deaf and hard of hearing
- [ ] Spokesperson or other auxiliary aid for the speech impaired
- [ ] Foreign language interpreter-specify language: _____
- [ ] Other: _____

Attorney Name: **Laura Davidson**

Firm: **Mountain State Justice, Inc.**

Address: **1029 University Ave, Ste. 101, Morgantown, WV 26505**

Telephone: **(304) 326-0188**

Representing:
- [X] Plaintiff
- [ ] Defendant
- [ ] Cross-Defendant
- [ ] Cross-Complainant
- [ ] 3rd-Party Plaintiff
- [ ] 3rd-Party Defendant

[ ] **Proceeding Without an Attorney**

Original and __4__ copies of complaint enclosed/attached.

Dated: __04__ / __23__ / __2021__   Signature: */s/ Laura Davidson*

**SCA-C-100:** Civil Case Information Statement (Other than Domestic Relation)

PYMT Type ___
Rept # ___
Iss. Sum + ___    $200 ✓  $135 ___
___ Ret. to Atty    No Sum. Iss ___
___ Mailed CM/RM    $20cm X ___
___ Mailed to sos w/ck#    $5 clk X ___
___ Sent to ___ w/ck# ___    ✓$15 mdf X 3

**IN THE CIRCUIT COURT OF KANAWHA COUNTY OF WEST VIRGINIA**

**PAUL GRIFFITH**

          **Plaintiff,**

v.

Civil Action No.: 21-C-352

Bloom

**THE CHEMOURS COMPANY;**
**THE CHEMOURS COMPANY FC, LLC;**
**AND THE CHEMOURS COMPANY TT, LLC**

          **Defendant.**

## COMPLAINT

This Complaint arises from Defendants' unlawful, retaliatory discharge of Plaintiff. Plaintiff regularly and repeatedly reported Defendants' violations of West Virginia Water Pollution Control Act ("WVWPCA"), applicable United States Department of Transportation, Federal Motor Carrier Safety Administration, ("DOT"), and United States Department of Labor Occupational Safety and Health Administration ("OSHA") safety regulations under CPSIA. After Plaintiff reported these violations of substantial public policy, Defendants terminated Plaintiff in retaliation for his good faith behavior. Plaintiff now seek redress for Defendants' unlawful misconduct.

## PARTIES

1.     Plaintiff Paul Griffith is a 47-year-old resident of Boone County who, as described below, was employed by Defendants.

2.     Defendants the Chemours Company, the Chemours Company FC, LLC; and the Chemours Company TT, LLC, ("Chemours") is a chemical manufacturing plant with a principal

1

place of business located at 1007 Market Street, Wilmington, DE 19899; and an operating plant located at 901 W. Dupont Avenue, Belle, WV 25015.

## STATEMENT OF FACTS

3.      Paul Griffith began working at the same job site in August 2012.

4.      Defendant is a spin-off company of Dupont, and took over the Belle chemical plant in 2015.

5.      Plaintiff began working with Donnie Ennis in or around the summer of 2016. They worked on the A shift, working alternating thirty-six and forty-eight hour weeks as a two-person team.

6.      During their shifts, Plaintiff performed a number of job duties around the plant, including loading and unloading shipping containers, visually inspecting areas of the plant, writing work permits, completing gas checks, transporting samples to the lab, and checking units while in operation, among other tasks.

7.      From August 2012 to September 26, 2019, Paul Griffith earned approximately thirty-seven dollars per hour.

### **Plaintiff Begins Reporting Health and Safety Violations to Defendant**

8.      Plaintiff first became concerned about workplace safety violations in 2016. As a result, Plaintiff began regularly and repeatedly reporting these safety violations to Defendants.

### ***Loading and Unloading Hazardous Materials***

9.      For instance, Defendants had cargo tank loading spots which were not in compliance with DOT Hazardous Materials Regulations.

10.     For instance, Defendants failed to maintain its load shack and scales. The load shack is one of Defendants' designated spaces where a qualified person attends and monitors the loading and unloading of hazardous materials into cargo tanks.

11.     Under 49 C.F.R. §177.834, the attendance requirement of DOT's Hazardous Materials Regulations, a qualified person attending the loading and unloading process must be within twenty-five feet of and have an unobstructed view of the cargo tank during the loading and unloading process.

12.     Defendant's load shack is dilapidated with rusted walls, has no video monitoring system or windows, and has no line of sight of the cargo tanks during the loading and unloading process.

13.     Because of this, the attendant did not have an unobstructed line of sight to the cargo tanks as they were loaded and unloaded in violation of 49 C.F.R. § 177.834(i)(3). This violation posed an unreasonable risk to Plaintiff's and the general public's health, safety, and property when hazardous materials are transported in commerce.

14.     Plaintiff regularly reported this violation to agents of Defendants on multiple occasions between 2016-2019. However, Defendants failed to repair the load shack in violation of DOT regulations throughout Plaintiff's employment.

15.     Additionally, Defendants regularly failed to maintain its video monitoring system, which was intended to meet the attendance requirement of DOT's Hazardous Materials Regulations, in lieu of a qualified attendant who is able to monitor the process within twenty-five feet of the process. 49 C.F.R. § 177.834(i).

16.     Under this provision, a mounted video monitoring system, with an unobstructed view, may be attended by a qualified person to monitor the loading and unloading of hazardous materials in cargo tanks. 49 C.F.R. § 177.834(i)(3).

17.     This failure to maintain its video monitoring system violated DOT regulations intended to protect the public from unreasonable risks to health, safety, and property when hazardous materials are transported in commerce. 49 C.F.R. §§ 171.8 & 177.834.

18.     Plaintiff discovered that the video monitoring system was not working in or around April 2018 and again during the first quarter of 2019. Plaintiff repeatedly reported this safety violation to agents of Defendants, including but not limited to, Adam Akers, Ira Jeffries, Tom Montgomery, among others.

19.     Although Plaintiff made repeated reports of this safety violation to Defendants, the video monitoring system was still malfunctioning when Plaintiff was unlawfully terminated on September 26, 2019.

20.     Employees are protected from retaliation, under the Consumer Product Safety Improvement Act ("CPSIA"), for reporting to their employer, the federal government, or a state attorney general, reasonably perceived violations of any statute of any statute or regulation within the Consumer Product Safety Commission. 15 U.S.C. § 2087.

21.     Upon information and belief, Defendants are a manufacturer covered by CPSIA.

### *Fire and Gas Detection System*

22.     Additionally, Defendants failed to maintain its fire and gas detection system. In early 2019, the fire and gas detection system had been malfunctioning for approximately six months, including sounding an alarm when there was no fire or gas leak, and reporting that there was an error in the system affecting its operation.

4

23.    Plaintiff reported this ongoing safety risk to Defendants on numerous occasions, yet the system was not repaired at the time Plaintiff was unlawfully terminated.

### *Illegal Discharge of Pollutants into the Kanawha River*

24.    In or around 2017, Plaintiff became aware of water seeping out of the ground. The seepage was next to a weak acid tank roughly one hundred yards from the Kanawha River.

25.    Agents of Defendants began to dig to investigate the source of this water.

26.    As a result of this digging, it became clear that there was a pipe in the ground that was leaking water and pollution.

27.    The pipe was left alone by Defendants until approximately June 2019, when Defendants further excavated the pipe.

28.    Following this additional excavation, Plaintiff learned that the pipe ended in an unpermitted outfall into the Kanawha River.

29.    Pursuant to the federal Clean Water Act (CWA) and the West Virginia Water Pollution Control Act (WVWPCA), discharges of pollution into jurisdictional waters without a permit are prohibited. *See* 33 U.S.C. § 1311(a); W. Va. Code § 22-11-8(b).

30.    The Kanawha River is a jurisdictional water under both statutes.

31.    Chemicals and other material entering the pipe would be considered pollutants, for which the Defendant would be responsible, under both the CWA and WVWPCA.

32.    Plaintiff believed, based on his knowledge of the plant, that the pipe was transporting cooling water from an acid cooler. Water from the acid cooler was overflowing and the cooling water collected in the sump pump pit. Further, he believed that the pump was not working. Because of this, the sump pit overflowed into the hole where the pipe was and then the

pipe leaked into the outflow into the river. However, Plaintiff did not know what substances were mixed with the water leaking into the Kanawha River.

33.     Upon information and belief, Defendants did not acquire the necessary United States Environmental Protection Agency or West Virginia Department of Environmental Protection permits for the outfall.

34.     Plaintiff was deeply concerned about this unpermitted, unlawful outfall and the potential hazards it could pose to environmental safety.

35.     Plaintiff regularly and repeatedly reported this ongoing safety risk to agents of Defendants.

36.     Instead of rectifying the situation, the Plant Manager, Andy Harris, instructed employees to stop excavating. Upon information and belief, further excavation would lead to identifying additional information about illegal outflows that could subject Defendants to fines or additional costs.

37.     Throughout 2019, Plaintiff continued to report this ongoing hazard. Plaintiff made reports to the process supervisor, area managers, maintenance workers, and the plant manager, among others.

38.     Plaintiff was told by the Unit Manager, Jim Hollingsworth, that the problem was resolved, and that he no longer needed to raise concerns regarding the outfall.

39.     However, Plaintiff observed the hole in the pipe that was still visible after excavation, and believed that no steps had been taken to remedy the unsafe outfall. Therefore, he continued to advocate for the situation to be remediated appropriately.

40.     Despite Plaintiff's repeated voicing of his concerns, upon information and belief, Defendants did not remediate the illegal outfall.

### *Broken Dikes and Chemical Leaks*

41.     On or about June 2018, Defendants took a pump out of service because the lines were rotted and needed replacing. Defendants took over a year to replace these lines.

42.     Due to this line failure, dimethyl sulfate ("DMS"), and rainwater accumulated into a dike for tanks 70 and 72, filling it with about four feet of liquid. DMS is an extremely toxic liquid or vapor if swallowed and causes skin, eye, and respiratory irritation, among other health hazards.

43.     Defendants knowingly added DMS to this dike for over a year. Plaintiff, and other operators, took daily samples of DMS and then flushed the lines out to ensure fresh samples. The sample point then drained into that dike.

44.     Defendants never declared this dike an emergency, and did not terminate anyone as a result of the unlawful discharge of DMS into the dike.

45.     On another occasion in 2018, another employee, Craig Tyler, left a valve open that caused 45,000 pounds of Dimethylacetamide ("DMAC"), to be pumped into the ground. Mr. Tyler was not terminated as a result of the leak.

46.     In July of 2019, Plaintiff discovered that a sulfur trioxide ("SO3") tank's pressure was slowly rising and then decreasing. The normal operating pressure is zero.

47.     SO3 is generally a colorless liquid that can react with water to form sulfuric acid. Both chemicals are corrosive and can cause chemical burns when they come into contact with skin, and can cause respiratory irritation when inhaled, among other health hazards.

48.     The SO3 tank was located inside the plant, thirty feet away from control room and roughly one hundred yards from the Kanawha River.

49.     This tank posed a risk to public safety because if the pressure continued to build, the tank could release an estimated 100,000-300,000 pounds of SO3 fumes into the atmosphere.

50.     Upon discovery, Plaintiff reported the risk to Defendants. However, Defendants again failed to take action and did not repair the tank.

51.     Ultimately the pressure in the SO3 tank continued to rise to unsustainable levels. As a result, the tank began malfunctioning, and other employees pulled the fume alarm because of the risk posed to another nearby tank that contained weak acid. The fume alarm was pulled December 13, 2019—several months after Plaintiff was terminated. If the pressure in either of these tanks had continued to rise—hazardous fumes could have been released into the atmosphere.

52.     Additionally, on or about July 2019, a pump in another dike, for tanks 74 and 76, stopped working. The dike was located roughly twenty feet from the control room. This dike contained DMS.

53.     During that same time period the plant shutdown for about ten days to perform maintenance work.

54.     After the Plaintiff returned to work he observed two to three inches of standing water in the dike. This dike was usually empty and existed to catch liquid that may drip out from chemical storage units.

55.     Plaintiff was aware that it had been raining heavily during the shutdown and that the pump in the dike was still broken. Because of these facts, Plaintiff assumed that the liquid in the dike was rainwater.

56.     A few days later, Plaintiff noticed that the liquid, which he believed was rainwater, was a few inches higher. Because the dike contained a tub of caustic, used to decontaminate items, Plaintiff reported to Defendants that he believed that the liquid in the dike was rainwater, but that it might have mixed with the caustic.

57.     About a week later at the end of his shift, Plaintiff noticed that the level of liquid in the dike had risen to about twelve to sixteen inches.

58.     Plaintiff still believed that the liquid was rainwater, but also felt that the situation should be investigated further. Before leaving at the end of his shift, Mr. Ennis shut the loading pump off, and Plaintiff informed Clint Ryan and Rodney Knight, who were working the next shift, to see what needed to happen to get the dike pumped out because the pump itself was broken.

59.     Rather than investigating the situation at that moment, Mr. Knight and Mr. Ryan allowed a truck driver to enter and unload before telling Defendants about the dike — three hours after Plaintiff had left the plant.

60.     Upon information and belief, Defendants then took samples of the liquid and sent it to the lab for testing. It was determined that DMS had leaked into the dike. As a result, the fire alarm was pulled.

61.     Upon information and belief, not a drop of DMS was leaked onto the ground.

62.     Shortly thereafter, Defendants began an investigation to determine who was at fault for the DMS leak. This investigation lasted a couple of months.

63.     Plaintiff continued to be employed during the course of the investigation.

64.     Upon information and belief, a valve was left open during the maintenance shutdown and caused the leak.

65.     Numerous employees had observed the same circumstances as Plaintiff, yet no other employee reported the liquid in the dike to Defendant—except for the Plaintiff and Mr. Ennis.

66.     Despite this, on September 26, 2019, Defendants terminated Plaintiff's employment, purportedly due to the DMS leak because he didn't pull the alarm, in violation of company policy. However, there was no evidence that Plaintiff was at fault for the leak and Plaintiff had alerted Mr. Knight and Mr. Ryan of the situation.

67.     Additionally, six days prior to their unlawful termination, Defendants changed its corrective actions policy.

68.     Moreover, Mr. Griffith had worked for Defendant for seven years and was never written up.

69.     Upon information and belief, no other employees were reprimanded or terminated as a result of Defendants' investigation.

70.     Plaintiff suffered termination of employment in retaliation for his prior reports of Defendants' repeated violations of well-established public policy. Plaintiff's belief that his termination was retaliatory is based, in part, on the outcomes of the other dike and co-employee Mr. Tyler's failure to shut off the valve as alleged previously.

71.     Plaintiff files this action to seek redress for his unlawful termination and enjoin Defendants from their reckless, wanton, willful, and malicious conduct.

### COUNT ONE
### Retaliatory Discharge in Violation of Public Policy

72.     Plaintiff incorporate the preceding paragraphs by reference.

73.     "The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge." Syl. Pt., *Harless v. First Nat'l Bank in Fairmont*, 162 W.Va. 116, 117, 246 S.E.2d 270, 271 (1978).

74.     Defendants violated substantial public policy by violating the DOT; CWA; WVWPCA; and OSHA safety regulations under CPSIA.

75.     Plaintiff made reports of violations of these public policies.

76.     Defendants discharged Plaintiff in retaliation for his attempts to enforce public policy of workplace safety and environmental protection.

77.     Defendants were thus motivated by its desire to contravene public policy.

**WHEREFORE**, Plaintiff seeks the following relief:

(a)     Actual damages;

(b)     Punitive damages;

(c)     Injunctive relief to enjoin continued unlawful employment practices;

(d)     Reasonable attorney fees and costs; and

(e)     All other relief which this Court deems equitable, just and proper.

**PLAINTIFF RESPECTFULLY REQUEST A TRIAL BY JURY.**

**PAUL GRIFFITH**
**Plaintiff, by and through Counsel,**

*Laura Davidson by SKB #10845*
Laura Davidson  (WVSB # 13832)
Jennifer S. Wagner (WVSB #10639)
Mountain State Justice
1029 University Avuenue
Suite 101
Morgantown, WV 26505
P: (304) 326-0188
F: (304) 326-0189
Laura@msjlaw.org

*Counsel for the Plaintiff*

11

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

FILED

2021 MAY 14  AM 9:43

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

PAUL GRIFFITH,

    Plaintiff,

v.

                            CIVIL ACTION NO.   21-C-352
                            JUDGE:  BLOOM

THE CHEMOURS COMPANY
THE CHEMOURS COMPANY FC, LLC,

**SERVE:**

**THE CHEMOURS COMPANY**

**CT CORPORATION SYSTEM**
**1627 Quarrier Street**
**Charleston, WV  25311-2124**

**SUMMONS**

To:  The Above-Named Defendant:

**IN THE NAME OF THE STATE OF WEST VIRGINIA,**

    You are hereby summoned and required to serve upon **Laura Davidson/Mountain State Justice, Inc., whose address is 1029 University Ave., Ste. 101, Morgantown, West Virginia, 26505,** an answer, including any related counterclaim you may have, to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you.

    You are required to serve your answer to the Complaint within **thirty (30)** days after service of this Summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

                                    **Cathy S. Gatson, Clerk**
                                      Clerk of Court
                                      By CHugh

Date: May 14, 2021

*Re-issued sums + 1 cpy returned to Atty.*

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

DONNIE ENNIS,

     Plaintiff,

v.                                     CIVIL ACTION NO.  21-C-353
                                            JUDGE: BLOOM

THE CHEMOURS COMPANY
THE CHEMOURS COMPANY FC, LLC,

*2021 MAY 14 AM 9:37*
*CATHY S. GATSON, CLERK*
*KANAWHA COUNTY CIRCUIT COURT*

### SERVE:

**THE CHEMOURS COMPANY**

**CT CORPORATION SYSTEM**
**1627 Quarrier Street**
**Charleston, WV 25311-2124**

### SUMMONS

To: The Above-Named Defendant:

**IN THE NAME OF THE STATE OF WEST VIRGINIA,**

     You are hereby summoned and required to serve upon **Laura Davidson/Mountain State Justice, Inc., whose address is 1029 University Ave., Ste. 101, Morgantown, West Virginia, 26505,** an answer, including any related counterclaim you may have, to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you.

     You are required to serve your answer to the Complaint within **thirty (30)** days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

                                      **Cathy S. Gatson, Clerk**

                                      Clerk of Court

Date: May 14 2021

                                      By CHugh

*re-issued sums*
*+ 1 copy*
*return to Atty*

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

FILED

2021 JUN -1  PM 2: 54

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT



**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
888-767-8683
**Visit us online:**
www.wvsos.com

KANAWHA COUNTY CIRCUIT COURT
Kanawha County Courthouse
111 Court Street
Charleston, WV 25301-2500

| | | |
|---|---|---|
| **Control Number:** 275456 | **Agent:** | C. T. Corporation System |
| **Defendant:** THE CHEMOURS COMPANY FC, LLC | **County:** | Kanawha |
| 1627 QUARRIER ST. | **Civil Action:** | 21-C-352 |
| CHARLESTON, WV 25311 US | **Certified Number:** | 92148901125134100003127486 |
| | **Service Date:** | 5/26/2021 |

I am enclosing:

**1 summons and complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in your name and on your behalf.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office**.*

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

FILED

**IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA**

2021 JUN -1 PM 2: 54

**PAUL GRIFFITH,**

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

     **Plaintiffs,**

**v.**

                                                  Civil Action No. 21-C-352

**THE CHEMOURS COMPANY FC, LLC,**

     **Defendant.**

                         **SERVE: WEST VIRGINIA SECRETARY OF STATE**
                         **THE CHEMOURS COMPANY FC, LLC**
                         **CT CORPORATION SYSTEM**
                         **1627 QUARRIER ST.**
                         **CHARLESTON, WV 25311-2124**

                         **SUMMONS**

To: The Above-Named Defendant:

IN THE NAME OF THE STATE OF WEST VIRGINIA,

    You are hereby summoned and required to serve upon Laura Davidson / Mountain State Justice, Inc., whose address is 1029 University Ave, Ste. 101, Morgantown, WV 26505, an answer, including any related counterclaim you may have, to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you.

    You are required to serve your answer to the Complaint within twenty (20) days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

Date: 4/25/21
                                          Cathy S. Gatson, Clerk

                                        Clerk of Court  by C Atkins

Civil Action Number          21-C-352
Package Identification Code  92148901125134100003127493
Signature Downloaded         6/7/2021 6:02:13 AM
Defendant Name               THE CHEMOURS COMPANY







Date Produced: 06/07/2021

WEST VIRGINIA SECRETARY OF STATE:

The following is the delivery information for Certified Mail™/RRE item number 9214 8901 1251 3410 0003 1274 93. Our records indicate that this item was delivered on 06/01/2021 at 02:11 a.m. in CHARLESTON, WV 25321. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number:      312749



| | |
|---|---|
| Civil Action Number | 21-C-352 |
| Package Identification Code | 92148901125134100003127486 |
| Signature Downloaded | 6/7/2021 6:02:13 AM |
| Defendant Name | THE CHEMOURS COMPANY FC, LLC |


**UNITED STATES POSTAL SERVICE**

Date Produced: 06/07/2021

WEST VIRGINIA SECRETARY OF STATE:

The following is the delivery information for Certified Mail™/RRE item number 9214 8901 1251 3410 0003 1274 86. Our records indicate that this item was delivered on 06/01/2021 at 02:11 a.m. in CHARLESTON, WV 25321. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number:     312748

Search                                              http://apps.sos.wv.gov/business/service-of-process/Home/Sear...



# West Virginia Secretary of State
## Mac Warner

(http://www.sos.wv.gov)

Home (http://www.sos.wv.gov/pages/default.aspx) | Business4WV (http://www.business4wv.com/b4wvpublic/) |
News Center (/news/Pages/default.aspx) | (http://www.facebook.com/wvsos) (http://twitter.com
/wvsosoffice) (http://www.sos.wv.gov/_layouts/feed.aspx?xsl=1&web=%2Fnews&page=26402023-
f08d-441f-9bbd-5690559009d1&wp=d963eb34-2126-4d12-bf9a-8c46be406e7e)

Secretary of State (http://www.sos.wv.gov/Pages/default.aspx) > Business and Licensing (http://www.sos.wv.gov
/business-licensing/Pages/default.aspx) > Service of process search (/business/service-of-process/) > Search
results

| Civil action # | County | Defendant | Serviced |
|---|---|---|---|
| 21-C-352 | Kanawha | THE CHEMOURS COMPANY (/business/service-of-process/Home/Details/275457) | Wednesday, May 26, 2021 |
| 21-C-352 | Kanawha | THE CHEMOURS COMPANY FC, LLC (/business/service-of-process/Home/Details/275456) | Wednesday, May 26, 2021 |

Total: 2 results

Home (http://www.sos.wv.gov/pages/default.aspx) | Contact Us (http://www.sos.wv.gov/Pages/contact-us.aspx) | Site
Map (http://www.sos.wv.gov/Pages/sitemap.aspx) | Disclaimer (http://www.sos.wv.gov/Pages/content-disclaimer.aspx)

 west virginia   (http://www.wv.gov)

State Agency Directory (http://www.wv.gov/Pages/agencies.aspx) | Online Services (http://www.wv.gov/Pages
/services.aspx)



EXHIBIT

B

State of Delaware
Secretary of State
Division of Corporations
Delivered 08:34 AM 10/30/2017
FILED 08:34 AM 10/30/2017
SR 20176834619 - File Number 5516785

## CERTIFICATE OF MERGER
## OF
## THE CHEMOURS COMPANY TT, LLC
(a Pennsylvania limited liability company)
## WITH AND INTO
## THE CHEMOURS COMPANY FC, LLC
(a Delaware limited liability company)

This Certificate of Merger of The Chemours Company TT, LLC with and into The Chemours Company FC, LLC is being filed in accordance with the provisions of 6 *Del. C.* §18-209, and the undersigned limited liability company does hereby certify as follows:

    1.  The name, jurisdiction of formation and type of entity of each of the constituent entities which is to merge are as follows:

| Name | Jurisdiction of Formation | Type of Entity |
|------|---------------------------|----------------|
| The Chemours Company TT, LLC | Pennsylvania | limited liability company |
| The Chemours Company FC, LLC | Delaware | limited liability company |

    2.  An Agreement and Plan of Merger has been approved and executed (the "Agreement of Merger") in accordance with 6 *Del. C.* § 18-209 by The Chemours Company TT, LLC and The Chemours Company FC, LLC.

    3.  The name of the surviving Delaware limited liability company is The Chemours Company FC, LLC.

    4.  The merger of The Chemours Company TT, LLC with and into The Chemours Company FC, LLC, and this certificate of merger, shall not become effective until November 1, 2017.

    5.  The Agreement of Merger is on file at the place of business of the surviving limited liability company located at 1007 Market Street, Wilmington, Delaware 19899.

    6.  A copy of the Agreement of Merger will be furnished by the surviving limited liability company, on request and without cost, to any member of The Chemours Company FC, LLC or any person holding an interest in The Chemours Company TT, LLC.

*[Signature page follows.]*



EXHIBIT

C

IN WITNESS WHEREOF, this Certificate of Merger has been executed by the undersigned authorized person in accordance with 6 *Del. C.* § 18-204.

THE CHEMOURS COMPANY FC, LLC

By: _____

Name:  Brian Morrissey
Title:  Authorized Person

[Signature Page to Certificate of Merger]

5160827v.3



# Delaware

### The First State

Page 1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"THE CHEMOURS COMPANY TT, LLC", A PENNSYLVANIA LIMITED
LIABILITY COMPANY,

WITH AND INTO "THE CHEMOURS COMPANY FC, LLC" UNDER THE NAME
OF "THE CHEMOURS COMPANY FC, LLC", A LIMITED LIABILITY COMPANY
ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE,
AS RECEIVED AND FILED IN THIS OFFICE ON THE THIRTIETH DAY OF
OCTOBER, A.D. 2017, AT 8:34 O`CLOCK A.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF
THE AFORESAID CERTIFICATE OF MERGER IS THE FIRST DAY OF
NOVEMBER, A.D. 2017.

Jeffrey W. Bullock, Secretary of State

5516785  8100M
SR# 20176834619

Authentication: 203483597
Date: 10-30-17

You may verify this certificate online at corp.delaware.gov/authver.shtml

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

PAUL GRIFFITH,

        Plaintiff,

v.                                 Civil Action No. 21-C-352

THE CHEMOURS COMPANY,
THE CHEMOURS COMPANY FC, LLC,
AND THE CHEMOURS COMPANY TT, LLC,

        Defendants.

## NOTICE OF REMOVAL TO FEDERAL COURT

Notice is hereby given that the above-styled action has been removed to the United States District Court for the Southern District of West Virginia, pursuant to 28 U.S.C. § 1332, 1441 and 1446, et seq. Pursuant to 28 U.S.C. § 1446, a copy of the Notice of Removal, with exhibits, is attached hereto as Exhibit A.

                THE CHEMOURS COMPANY,
                THE CHEMOURS COMPANY FC, LLC, AND
                THE CHEMOURS COMPANY TT, LLC

                By: Spilman Thomas & Battle, PLLC

                _Ellen J. Vance_

                _____
                Eric W. Iskra (WV State Bar # 6611)
                Ellen J. Vance (WV State Bar # 8866)
                300 Kanawha Boulevard, East (Zip 25301)
                P.O. Box 273
                Charleston, West Virginia 25321-0273
                304-340-3800
                304-340-3801 (fax)
                eiskra@spilmanlaw.com
                evance@spilmanlaw.com



EXHIBIT

D

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

PAUL GRIFFITH,

        Plaintiff,

v.                                    Civil Action No. 21-C-352

THE CHEMOURS COMPANY,
THE CHEMOURS COMPANY FC, LLC,
AND THE CHEMOURS COMPANY TT, LLC,

        Defendants.

## CERTIFICATE OF SERVICE

    I, Ellen J. Vance, do hereby certify that I have served the foregoing "Notice of Removal to Federal Court" upon the following counsel of record by depositing the same in the United States mail, postage prepaid on this 25th day of June, 2021, addressed as follows:

        Laura Davidson, Esquire
        Jennifer S. Wagner, Esquire
        Mountain State Justice
        1029 University Avenue, Suite 101
        Morgantown, West Virginia  26505

                                _Ellen J. Vance_
                                Ellen J. Vance (WV State Bar # 8866)