IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

PAUL GRIFFITH and
DONNIE ENNIS,

           Plaintiffs,

v.                                            CIVIL ACTION NO.  2:21-cv-00369
                                              (consolidated case: 2:21-cv-00368)

THE CHEMOURS COMPANY and
THE CHEMOURS COMPANY FC, LLC,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Motion to Dismiss Plaintiffs' Amended Complaint* (Document 26), *Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint* (Document 27), *Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint* (Document 30), and *Reply in Further Support of Defendants' Motion to Dismiss* (Document 33). For the reasons stated herein, the Court finds that the motion to dismiss should be granted in part and denied in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Plaintiffs originally filed separate complaints on April 28, 2021, in the Circuit Court of Kanawha County, West Virginia. The cases were removed to this Court on June 25, 2021. On July 20, 2021, the two cases were consolidated. On July 26, 2021, an amended complaint was filed. The amended complaint alleges that the Plaintiffs were unlawfully discharged in retaliation

for reporting Defendants' violations under applicable United States Department of Transportation, Federal Motor Carrier Safety Administration (DOT) hazardous material regulations; United States Department of Labor Occupational Safety and Health Administration (OSHA) safety regulations; applicable federal Clean Water Act (CWA) regulations; and, applicable West Virginia Water Pollution Control Act (WVWPCA) regulations.

In particular, the amended complaint alleges that Plaintiff Griffith began working at the Chemours plant in Belle, West Virginia, in 2012. Plaintiff Ennis worked at the Belle site for twenty-six years and was employed by the Defendants for twelve years. The Defendants are a spin-off company of Dupont and took over the Belle chemical plant in 2015. In or around the summer of 2016, the Plaintiffs began working together as a two-person team. On that team, the Plaintiffs performed various job duties, including loading and unloading shipping containers, visually inspecting areas of the plant, writing work permits, completing gas checks, transporting samples to the lab, and checking units while in operation, among other tasks.

Beginning in 2016, the Plaintiffs began regularly and repeatedly reporting safety violations to the Defendants. For example, the Defendants failed to maintain its load shack in compliance with DOT Hazardous Materials Regulations, and also failed to maintain its fire and gas detection system. The load shack is a designated space where a qualified person attends and monitors the loading and unloading of hazardous materials in cargo tanks. The Plaintiffs regularly reported such violations to the Defendants, but the Defendants failed to repair the load shack or the fire and gas detection system throughout the Plaintiffs' term of employment.

In or around 2017, the Plaintiffs also became aware of an unpermitted outfall into the Kanawha River, which was leaking unknown substances. Plaintiffs regularly and repeatedly

reported this risk to agents of the Defendants. Instead of correcting the unpermitted outfall, the Plant Manager instructed employees to stop excavating in an attempt to avoid identifying additional information about illegal outflows that could subject the Defendants to fines or costs. The situation was not remedied during the Plaintiffs' term of employment. Moreover, multiple chemical leaks occurred during the Plaintiffs' term of employment.

The Plaintiffs allege that they were unlawfully terminated on September 26, 2019, in retaliation for prior reports of Defendants' repeated violations. Plaintiff Griffith asserts that he worked for the Defendants for seven years and had never been written up; and, Plaintiff Ennis had worked at the Belle site for twenty-six years and had been employed by the Defendants for twelve years and was never written up. The Plaintiffs assert that employees are protected from retaliation for reporting reasonably perceived violations of any statute or regulations within the Consumer Product Safety Commission to their employer under the CPSIA. Based on these facts, the Plaintiffs have asserted a claim against the Defendants for retaliatory discharge in violation of public policy.

The Defendants filed their motion to dismiss on August 5, 2021. The Plaintiff filed a response on August 19, 2021, and a reply was filed on August 26, 2021. The matter is ripe for review.

**STANDARD OF REVIEW**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading

contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

4

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

**APPLICABLE LAW**

In West Virginia, "an employment unaffected by contractual or statutory provisions to the contrary, may be terminated, with or without cause, at the will of either party to a contract of employment." *Wright v. Standard Ultramarine & Color Co.*, 90 S.E.2d 459, 468 (W. Va. 1955). In *Harless v. First National Bank in Fairmont*, the West Virginia Supreme Court carved out an exception to that general rule, stating,

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

Syl., 246 S.E.2d 270, 271 (W. Va. 1978). Four factors guide a court's determination of whether an employee has successfully presented a *Harless* claim:

5

> (1) whether clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in common law; (2) whether dismissing employees under circumstances like those involved in plaintiff's dismissal would jeopardize the public policy; (3) whether dismissal was motivated by conduct related to the public policy; and (4) whether employer lacked overriding legitimate business justification for dismissal.

*Wiley v. Asplundh Tree Expert Co.*, 4 F.Supp.3d 840, 844-45 (S.D. W. Va. 2014) (Johnston, J.) (*quoting Feliciano v. 7-Eleven, Inc.*, 559 S.E.2d 713, 723 (W. Va. 2001)).

A *Harless* claim only exists where the statutory remedy is inadequate, or where there is no other private cause of action to enforce the public policy at issue. *Edmonds v. Altice Tech. Servs. US LLC*, 413 F.Supp. 3d 488, 493 (S.D. W. Va. 2019); *Daniel v. Raleigh Gen. Hospital LLC*, No. 5:17-cv-03986, 2018 WL 3650248, at *10 (S.D. W. Va. Aug. 1, 2018). "In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme." *Frohnapfel*, 772 S.E.2d at 354 (quoting Syl. pt. 3, *Parnar v. Americana Hotels, Inc.*, 652 P.2d 625 (1982)). "[T]o sustain a *Harless* action, an employee must identify a substantial public policy which is *specifically* implicated by the conduct which gave rise to the discharge and that his or her discharge was motivated by a desire to thwart such policy." *Taylor v. W. Virginia Dep't of Health & Hum. Res.*, 788 S.E.2d 295, 312 (W. Va. 2016).

The West Virginia Supreme Court has further explained,

> The term "substantial public policy" implies that the policy principle will be clearly recognized simply because it is substantial. An employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations.

6

*Birthisel*, 424 S.E.2d at 612. "[T]o be substantial, a public policy must not just be recognizable as such but be so widely regarded as to be evident to employers and employees alike." *Feliciano v. 7-Eleven, Inc.*, 559 S.E.2d 713, 718 (W. Va. 2001). "Inherent in the term 'substantial public policy' is the concept that the policy will provide specific guidance to a reasonable person." Syl. pt. 4, *Frohnapfel v. ArcelorMittal USA LLC*, 772 S.E.2d 350 (W. Va. 2015) (*quoting* Syl. pt. 2, *Birthisel*, 424 S.E.2d). "A determination of the existence of public policy in West Virginia is a question of law, rather than a question of fact for a jury." Syl. pt. 1, *Cordle v. Gen. Hugh Mercer Corp.*, 325 S.E.2d 111, 112 (W. Va. 1984).

"West Virginia courts have proceeded with 'great caution' in applying public policy to wrongful discharge actions." *Washington v. Union Carbide Corp.*, 870 F.2d 957, 962-63 (4th Cir. 1989). "[A] state claim which has not been recognized by that jurisdiction's own courts constitutes a settled question of law, which [should] not be disturbed by [a federal court] absent the most compelling of circumstances." *Tritle v. Crown Airways*, 928 F.2d 81, 84 (4th Cir. 1990). "The power to declare an employer's conduct as contrary to public policy is to be exercised with restraint." *Yoho v. Triangle PWC, Inc.*, 336 S.E.2d 204, 209 (W. Va. 1985). The West Virginia Supreme Court "has read *Harless* narrowly so as not to 'unlock a Pandora's box of litigation in the wrongful discharge arena.'" *Baisden v. CSC-Pa, Inc.*, No. 2:08-cv-01375, 2010 WL 3910193, at *5 (S.D. W. Va. Oct. 1, 2010) (Goodwin, J.) (*quoting Roberts v. Adkins*, 444 S.E.2d 725, 729 (W. Va. 1994)).

## DISCUSSION

The amended complaint alleges that the Plaintiffs were unlawfully discharged in retaliation for reporting Defendants' violations under applicable United States Department of Transportation,

Federal Motor Carrier Safety Administration (DOT) hazardous material regulations, United States Department of Labor Occupational Safety and Health Administration (OSHA) safety regulations, applicable federal Clean Water Act (CWA) regulations and applicable West Virginia Water Pollution Control Act (WVWPCA) regulations. The Plaintiffs assert that those laws and regulations are substantial public policy upon which their *Harless* claims are premised.

The Defendants argue that the Plaintiffs' complaint fails to state a valid *Harless* claim. In particular, the Defendants assert that the regulations or policies cited by the Plaintiffs do not contain sufficient guidance to constitute substantial public policy in West Virginia. The Defendants further argue that other mechanisms to enforce the alleged public policies exist, and that this Court should decline to expand *Harless*, in keeping with prior precedent.

The Plaintiffs argue that statutory remedies available to them under OSHA and the CWA are inadequate to remedy the wrong. The Plaintiffs further argue that the federal and state statutes they have identified are sufficient to serve as sources of substantial public policy. Moreover, the Plaintiffs argue that they have identified the most compelling circumstances to support the Court's finding that OSHA and CWA are sources of substantial public policy, and that the West Virginia Supreme Court has already recognized the WVWPCA as a predicate for a *Harless* claim.

A. *West Virginia Water Pollution Control Act*

The Plaintiffs allege that they were discharged for reporting violations of the West Virginia Water Pollution Control Act. The Plaintiffs assert that the WVWPCA serves as a predicate for a *Harless* claim, citing *Frohnapfel v. ArcelorMittal USA LLC*, 772 S.E.2d 356 (2015). The Defendants argue that the West Virginia Supreme Court has not established a *Harless* claim based on the WVWPCA provisions that bar discharge of pollution into jurisdictional waters without a

permit but has instead only found a *Harless* claim viable where an employer discharged in violation of an issued permit. The Defendants further argue that the general provisions of the WVWPCA which bar pollution discharges into jurisdictional waters are too broad to provide sufficient guidance to employers, and thus, cannot serve as a substantial public policy.

In *Frohnapfel*, the Court declared that the WVWPCA embodies a substantial public policy in its stated purpose of protecting the water resources of the State. W. Va. Code § 22-11-2; *Frohnapfel*, 772 S.E.2d at 358. "An employee who alleges he or she was discharged for reporting violations of a permit issued under authority of the West Virginia Water Pollution Control Act, W.Va. Code §§ 22-11-1 to -30 (2014), and making complaints to his/her employer about those permit violations, has established the predicate substantial public policy required to *prima facie* prove that the employer's motivation for the discharge was the contravention of public policy." Syl. pt. 5, *Frohnapfel*, 772 S.E.2d at 352. The WVWPCA states,

> (a) It is declared to be the public policy of the State of West Virginia to maintain reasonable standards of purity and quality of the water of the State consistent with (1) public health and public enjoyment thereof; (2) the propagation and protection of animal, bird, fish, aquatic and plant life; and (3) the expansion of employment opportunities, maintenance and expansion of agriculture and the provision of a permanent foundation for healthy industrial development.
>
> (b) It is also the public policy of the State of West Virginia that the water resources of this State with respect to the quantity thereof be available for reasonable use by all of the citizens of this State.

W. Va. Code § 22-11-2. The West Virginia Supreme Court determined that those provisions set forth a sufficiently clear statement of public policy with the objective of maintaining "reasonable standards of water purity and quality for the public's health and enjoyment." *Frohnapfel*, 772 S.E.2d at 358. Further, the Court reasoned that the Act "was imbued with the necessary teeth of

enforcement" because it makes it unlawful for an entity to violate the provisions of an issued permit and establishes civil and criminal penalties for violating permits. *Id.* Therefore, the Court determined that the Act could constitute a source of substantial public policy, and that it provided sufficient guidance to a reasonable person. *Id.*

In this case, the Defendants focus on the distinction between employers discharging pollutants in violation of an issued permit, and employers illegally discharging pollutants without a permit. The Defendants argue that the WVWPCA provisions which bar discharges of pollution without a permit are too vague to serve as a source of substantial public policy, because such requirements may not be apparent to a reasonable employer. However, the Court is not convinced by this distinction.

Discharges of pollution into jurisdictional waters without a permit are clearly prohibited under the WVWPCA. *See* W. Va. Code § 22-11-8(b). In finding that employers had sufficient guidance pursuant to the WVWPCA regarding discharges in contravention of an issued permit, the Court stated, "The employers of this state . . . have long been on notice that they cannot terminate an employee for his or her efforts to uphold this state's laws." *Id.* at 358 (*citing Harless*, 246 S.E.2d at 271; *Kanagy v. Fiesta Salons, Inc.*, 541 S.E.2d 616, 623 (W. Va. 2000)). The Court went on to state,

> For more than twenty years, the provisions of the Act have governed the acts of enterprises such as [the defendant] who utilize this state's waterways to discard the chemical residue of their manufacturing processes. Given the clarity of the Act's provisions that make it unlawful to violate a permit issued under the Act, it cannot be doubted that [the defendant] was fully apprised of its permit-related responsibilities under the Act as well as the penalties for non-compliance.

*Id.* at 358.

10

Similarly, given the clarity with which the WVWPCA prohibits discharges without a permit, it cannot be doubted that the Defendants were apprised of the duty to avoid unpermitted discharges. The Plaintiffs allege that the Defendants violated the WVWPCA because they knew that they needed to apply for permits to discharge chemicals into the Kanawha River, and they failed to do so, permitting and causing an outlet for industrial waste to flow into the Kanawha River, and increasing the volume of waste in the river. The Defendants in this case operate a sophisticated chemical manufacturing plant.

Part of the West Virginia Supreme Court's reasoning for finding a substantial public policy within the WVWPCA for discharges in violation of a permit was the existence of civil and criminal enforcement provisions within the Act. The Act explicitly states that "any person who violates any provision of this article . . . is subject to a civil penalty not to exceed $25,000 per day of such violation." W. Va. Code § 22-11-22 (a). The same civil penalty provisions apply to those unlawfully discharging pollutants without a permit as those discharging in violation of a permit under the Act. *Id.* Likewise, criminal penalties apply to any person who "causes pollution" or "who fails or refuses to apply for and obtain a permit as required by the provisions of this article" as well as to any person who "fails or refuses to comply with any term or condition of such permit." W. Va. Code § 22-11-24 (a). Thus, the Act treats discharges in contravention of an issued permit and discharges that occur without a necessary permit equally. Lastly, the same public policy of protecting the State's water resources is at issue whether pollutants are discharged in contravention of an issued permit, or without the necessary permit.

Therefore, the Court finds that the WVWPCA sets forth a substantial public policy on which a *Harless* claim may be based, and the Defendants' motion should be denied as to the claim

set forth for retaliatory discharge for reporting unpermitted discharges in violation of the WVWPCA.

  B. *The Clean Water Act*

The Plaintiffs allege that they were discharged in retaliation for reporting violations of the Clean Water Act. The Defendants argue that the CWA cannot serve as a basis for a *Harless* claim because the CWA itself contains a whistleblower provision which acts as a sufficient remedy for retaliatory discharge. The Defendants further argue that a *Harless* claim has never been recognized by West Virginia courts pursuant to the CWA and, therefore, this Court should decline the opportunity to expand *Harless*.

The Plaintiffs assert that the purpose of the Clean Water Act is to:

> restore and maintain the chemical, physical, and biological integrity of the Nation's waters. In order to achieve this objective it is hereby declared that, consistent with the provisions of this chapter—(1) it is the national goal that the discharge of pollutants into the navigable waters be eliminated by 1985; (2) it is the national goal that wherever attainable, an interim goal of water quality which provides for the protection and propagation of fish, shellfish, and wildlife and provides for recreation in and on the water be achieved by July 1, 1983 . . . .

33 U.S.C. § 1251. Discharges of pollution into jurisdictional waters without a permit are prohibited under the CWA. *See* 33 U.S.C. § 1311(a). Moreover, the CWA provides for both civil and criminal penalties for violations. *See* 33 U.S.C. § 1319. Therefore, in many respects the CWA is analogous to the WVWPCA.

Federal district courts "have found that federal statutory law can embody public policy for a *Harless* claim." *Collins v. Lowe's Home Centers, LLC*, No. CV 3:17-1902, 2017 WL 6061980, at *4 (S.D. W. Va. Dec. 7, 2017) (*citing Bartos v. PDC Energy, Inc.*, No. 1:16-cv-167, 2017 WL

12

2334457, at *5, *7-8 (N.D. W. Va. July 28, 2017); *Vandevander*, 149 F.Supp.3d at 729-31; *Brown v. Tethys Bioscience, Inc.*, No. 1:10-1245, 2013 WL 65456, at *10 (S.D.W. Va. Jan. 4, 2013) (Faber, S.J.); *Walker v. West Publ'g Corp.*, No. 5:09-cv-723, 2011 WL 3607960, at *8-9 (S.D.W. Va. Aug. 12, 2011) (Berger, J.); *Williams v. Basic Contracting Servs., Inc.*, No. 5:09-cv-49, 2010 WL 3244888, at *9-10 (S.D.W. Va. Aug. 17, 2010) (Johnston, J.); *see also Boone v. MountainMade Found.*, 857 F.Supp.2d 111, 114-16 (D.D. C 2012) (finding that the plaintiff could sustain a West Virginia *Harless* claim upon the substantial public policy embodied in the False Claims Act)). However, the West Virginia Supreme Court has not yet recognized the CWA as a source of substantial public policy.

Since the West Virginia Supreme Court has not addressed the issue of whether the CWA may serve as a source of substantial public policy to support a *Harless* claim, it is inappropriate for this Court to expand *Harless*. As noted above, the Fourth Circuit has stated that a state claim which has not been recognized by the applicable jurisdiction constitutes a settled question of law which is not to be disturbed. *Tritle*, 928 F.2d at 84; *Yoho*, 336 S.E.2d at 209; *Baisden*, No. 2:08-cv-01375, 2010 WL 3910193, at *5; *Abel v. Niche Polymer, LLC*, 468 F.Supp.3d 719, 723-25 (S.D. W. Va. 2020) (Johnston, J.). Moreover, the Fourth Circuit has instructed that federal courts may only "rule upon state law as it presently exists and not to surmise or suggest its expansion." *Tritle*, 928 F.2d at 84 (*quoting Washington v. Union Carbide Corp.*, 870 F.2d 957, 962 (4th Cir. 1989)). Therefore, in keeping with prior precedent cautioning federal courts against expanding *Harless* beyond its intended parameters, the Court finds that the Plaintiffs claim should be dismissed to the extent that it premises the *Harless* claim on the CWA as a source of substantial public policy.

### C. *OSHA Regulations*

The Plaintiffs argue that they were discharged in retaliation for reporting violations of OSHA and its regulations. They assert that OSHA provides for a substantial public policy, and cite that its purpose is "to regulate commerce among the several States and with foreign nations and to provide for the general welfare, to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources . . ." 29 U.S.C. § 651. The Defendants argue that the Plaintiffs' *Harless* claim related to OSHA is barred because OSHA does not provide sufficient guidance such that it constitutes a substantial public policy in West Virginia, OSHA provides a sufficient remedial scheme such that a *Harless* claim is barred, and the general safety provisions of OSHA have not been recognized as a proper source of public policy for a *Harless* claim.

This district recently considered the issue of whether OSHA constitutes a substantial public policy that may serve as the basis for a *Harless* claim and determined that it does not. *Abel*, 468 F.Supp.3d at 723-25. The West Virginia Supreme Court of Appeals has never recognized OSHA as a source of substantial public policy. *Id.* at 725. Therefore, the court refused to expand West Virginia law by recognizing a theory of substantial public policy absent a clear statement from the West Virginia Supreme Court of Appeals, in keeping with prior Fourth Circuit precedent. *Id.*

Accordingly, this Court finds that the Plaintiffs' *Harless* claim should be dismissed to the extent that it relies on OSHA and its attendant regulations to support the existence of a substantial public policy. Case law establishes that a *Harless* claim premised on OSHA as a source for a substantial policy has not been recognized by the West Virginia Supreme Court of Appeals. Moreover, the Fourth Circuit has directed that when a state claim has not been recognized by West

Virginia's own courts, federal courts should not disturb that status quo "absent the most compelling of circumstances." *Tritle*, 928 F.2d at 84. No such compelling circumstances exist in this case.

    *D. DOT Regulations*

The Plaintiffs argue that they were discharged for reporting violations of the DOT's Hazardous Materials regulations. The Plaintiffs assert that the purpose of the statute is to "prescribe regulations for the safe transportation, including security, of hazardous material in intrastate, interstate, and foreign commerce." 49 U.S.C. § 5103. Therefore, the Plaintiffs argue that this is sufficient to support a *Harless* claim.

The Defendants argue that DOT regulations cannot serve as the basis for a *Harless* claim because there are other mechanisms available to enforce the public policy at issue, statutory remedies are available to enforce any public policy that may exist under the DOT regulations, and that DOT regulations have not been recognized as a proper source of policy for a *Harless* claim. Similarly, the Court can find no case law wherein DOT regulations have been recognized by the West Virginia Supreme Court of Appeals as a substantial public policy for a *Harless* claim. Because this basis for a *Harless* claim has not been previously recognized by the West Virginia Supreme Court, this Court declines the opportunity to expand *Harless*, in keeping with prior precedent.

## CONCLUSION

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that the *Motion to Dismiss Plaintiffs' Amended Complaint* (Document 26) be **GRANTED IN PART AND DENIED IN PART**, as more fully set out herein.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: September 21, 2021

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA